Thank you, Chief Judge Gargory, and may it please the Court. When this case was previously before this Court, it vacated the District Court's dismissal of Mr. Goodman's claims against the defendants and remanded for further proceedings. On remand, however, the District Court refused to conduct any further proceedings that would let Goodman develop evidence in support of his claims. It denied his requests for discovery and an expert witness, supposedly because they were premature and unnecessary. It then turned around and granted summary judgment for the defendants because Goodman didn't have the types of evidence that only discovery and expert testimony could have produced. The District Court, therefore, placed Goodman in a catch-22. The only way for him to survive summary judgment was to present additional evidence. But the only way for him to present additional evidence was to survive summary judgment and get discovery and an expert witness. The District Court committed... Mr. Goodman, do you have his case before he brings a lawsuit or do you bring the lawsuit and then see if you can get enough evidence to support him? And I'm talking specifically with regard to the expert. I'm sorry, Your Honor, I'm not sure I understood your question. It must not have been a good question.  To do better. Most people, when they bring a lawsuit, have their evidence that forms the basis for their lawsuit. For example, if medical malpractice is alleged, they have an expert who will testify that malpractice occurred. What it seems to me is going on here is he brought a lawsuit alleging deliberate indifference in his medical care, but he has no expert that will verify or testify to that, no evidence other than his allegation as a layperson that malpractice occurred. So it looks like instead of having your evidence before you bring the lawsuit that would justify your lawsuit and your allegations, he's brought this lawsuit making these allegations. Now he wants to see if he's got a case. In other words, he wants us to find him an expert who will support his allegations. And that seems backwards to me. I know he's a prisoner and I know his conditions are limited, but it just seems backwards to me. I understand that concern, Your Honor, but Goodman does have evidence of deliberate indifference. And he put that, even though the district court denied him discovery and denied him an expert witness, we still submit that he had enough evidence to survive summary judgment on his deliberate indifference claim. Did he file his affidavit? Is that what you're referring to? No, I'm referring to the evidence that shows that the defendants, Dr. Brown and Dr. Spruill, believed that Goodman had a medical need for contact lenses and they nevertheless denied him contact lenses based on the policy. I thought that in his pleadings he said they told him that he didn't have a medical need, they couldn't find a medical need. No, Your Honor. That's the opposite of what he said. He said they told him that they would prescribe contact lenses for him and would like to do so, but that they were constrained by Virginia Department of Corrections policy and the orders of their superiors not to prescribe contact lenses. I'm looking at his allegations and it's allegation number 120. Excuse me. With regard, it's on page JA39. Yes, Your Honor. Look at allegation 120. For example, second sentence, he says, further, because he was unable to verify plaintiff's complaints, he would be disallowed from prescribing anything other than sunglasses. And that's in the plaintiff's complaint. Well, he says Dr. Brown told him that he would prescribe contact lenses for plaintiff as a sufficient workaround, but due to VDOC policy he was not allowed to prescribe them. And then, as you say, he says he wasn't able to verify plaintiff's headaches, but I don't think that's necessarily inconsistent with the view that Dr. Brown believed that he had headaches and believed that he needed contact lenses to treat his headaches. Well, I'm also looking at Mr. Goodman's affidavit that he gave. This is on page JA198. Yes, Your Honor. Number 12. It says, Dr. Brown told me he had no way of verifying my headaches and therefore could do nothing about them. So it seems to me that he was told and admits he was told that there was no objective medical basis to give him contacts. That's not how I read those statements, Your Honor, and I don't think it's necessary to draw that inference from those statements. I think those statements are saying Dr. Brown told him that he couldn't, as you say, he couldn't objectively verify his headaches, but that doesn't mean that Dr. Brown disbelieved that he had the headaches or disbelieved that the headaches were caused by his eyeglasses. And, in fact, there's evidence in the record that shows that Dr. Brown did believe those things. Namely, when Goodman told him that he had headaches that were caused by eyeglasses, Dr. Brown's response, immediate response, and this is in December of 2008 when he first saw Goodman, his response was not to say, oh, well, I can't verify them. You don't have a medical need for contact lenses. His response was to go to the warden of the prison and ask her to allow him to prescribe contact lenses for Goodman. And where is the evidence that the reason he went was because he thought there was a medical need as opposed to just trying to help the fellow out and get him some contacts without a medical need? That's an inference we're drawing from the evidence, Your Honor. Well, but he would not, I don't think he would not have to have gone to the warden if there was a medical need, right? He would have been able to exercise his independent judgment. It seems to me that the logical inference is he went to the warden because he couldn't legitimately say that your client had a medical need but wanted to prescribe the contacts nonetheless. That's a possible inference, Your Honor. It's not possible. I think the record shows that if a doctor says that there's a medical need for a procedure, or in this case contacts, why would he have to go to the warden? Well, the reason he had to go to the warden is because orders had been handed down that doctors were not to prescribe contact lenses. Unless they were medically necessary. That's what the written policy says, Your Honor, but our position is that there were orders from other prison officials that contact lenses were effectively banned. Dr. Brown told Goodman about a doctor who had tried to prescribe contact lenses for an inmate and was fired as a result. And so it's a reasonable inference to draw from the fact that he didn't tell Goodman you don't have a medical need for contact lenses. He didn't write that in the chart at the time. Instead, he went to the warden and asked for contact lenses, and then he reported back to Goodman and said, the warden has refused to allow me to prescribe contact lenses for you, even though I think they're an appropriate treatment for you. Your theory is that there's a written policy that requires medical necessity for the prescription of contacts, and there's an unwritten policy that nobody gets them under any circumstances. Yes, there is some sort of unwritten policy, either orders from other prison officials or, as Dr. Spruill admitted in his answer to the complaint, there's some sort of memo out there that was written in 2004 by the deputy director of VDOC that effectively bans contact lenses. Is that in the record? No, it's not, because Goodman hasn't been able to get discovery. That's one of the things he would certainly like to get in discovery if he were able to get discovery from the defendants. But we do have an affidavit from that person with regard to policy, J.B. Jades? Yes, Your Honor. He doesn't mention that policy. The other thing to your point, Judge Diaz, is that there is no evidence in the record that the reason Dr. Brown went to see the warden was because he was going above and beyond or trying to do a favor for Goodwin. Well, that's the way the other side portrays it, but go ahead. That's how they portray it, but that's not in his affidavit. He's never submitted any evidence saying that he was going above and beyond when he went to see Warden Runyon. In fact, in the affidavit that he submitted to the district court, he pretended that conversation never existed, never happened. He said in his affidavit the first time that he saw Goodman was in January 2009. In fact, he saw Goodman in December 2008, and that's when he went and saw the warden, and that's when he asked her to approve contact lenses for Goodman. So I don't think you can infer from arguments. I don't think you can rely solely on arguments in the appellate brief. They didn't even make this argument in the district court. I don't think you can infer from arguments in the appellate brief made for the first time that Dr. Brown was merely going above and beyond, and especially you can't conclude that that's the only reasonable inference that can be drawn from the evidence. It's a reasonable inference to conclude that Brown went to see the warden because he believed there was a medical need, and that's consistent, moreover, with the other evidence in the record, which is that from 2005 to 2008, when Goodman was a prisoner in VDOC, VDOC physicians prescribed contact lenses for him under the written policy that required contact lenses to be medically indicated. I'm sorry to interrupt you. Goodman gave, I mean, it's a long complaint, gave numerous affidavits, but does he ever say that a doctor told him, I think contacts are medically necessary, but I'm not going to give them to you? Does he ever quote a doctor as having said, I think they're medically necessary, but I'm not going to give them to you? No, I don't think he uses those particular words, Your Honor, but he's a pro se plaintiff in the district court. I think his allegations need to be construed liberally, and I think that's the impetus of what he was alleging was that the defendants were telling him, we think you should get contact lenses. We understand that eyeglasses are causing your headaches, but we've been ordered by our superiors not to provide them. That's the theory on which the district court dismissed the case the first time around was that the doctors wanted to prescribe contact lenses for Goodman, thought they were necessary, but that they couldn't do so because prison officials were instructing them not to do so and threatening them with being fired. I have another question, and I'm going to get you to switch gears a little bit now. Your clients represent as arguing medical malpractice deliberate indifference, not medical malpractice, deliberate indifference. Sometimes I read this, I think it's a medical malpractice case, but it's deliberate indifference. How do you reconcile the fact they sent him to an ophthalmologist with deliberate indifference? Well, I reconcile it because he still doesn't have contact lenses and he still only has eyeglasses that cause him severe headaches. So he still faces the basic choice that defendants have put him to, which is that either he can stumble around prison without being able to see or he can suffer severe pain by wearing the only form of corrective lenses that they've given to him. Now, they did send him to an ophthalmologist, but there's nothing in the record about what happened as a result of that visit. There's no evidence that the ophthalmologist concluded that his headaches weren't caused by eyeglasses. As the district court said, there's just nothing there. You know, I think that would be a proper subject for discovery. Doesn't he have the burden of proof with regard to deliberate indifference? He does, and he's – Well, there was a senseless act of wasted time. It seems like he would have said something, but he says nothing about what the ophthalmologist told him, the eye doctor told him. He says nothing about that, but I don't think he had a burden to say what the eye doctor told him. And I think that would be a proper subject for discovery, which the district court did not allow. Even if the ophthalmologist concluded that his eyeglasses weren't causing him headaches, I don't think that would change the outcome of the case, which is that discovery should have been allowed, the defendant should have been – or the good man should have been allowed to develop his claims. And there was already sufficient evidence in the record anyway that other prison physicians had concluded that he had a medical need for contact lenses. So from 2005 to 2008 – Oh, are you saying because he was allowed to keep them when he first came in? Is that what your basis is? He was both allowed to keep them and a prison physician prescribed contact lenses again for him, at least in 2005, after he was already in the system. That's on JA-91. That's a prescription that a prison physician made for contact lenses for him. At that time, the written policy said contact lenses are prescribed only when medically indicated, and if they're not medically indicated, you get eyeglasses. It seems like the record properly construed would show he's established a medical need because they prescribed him to them. Exactly, Your Honor. It's the other side trying to say justify a change. Yes, Your Honor, that's exactly right. He was prescribed contact lenses for at least three years under a policy that required a medical need. Right, the policy didn't change, and he was prescribed them. And now it's a new day. It seemed like the bird would be on them. The only thing that changed was that he was moved to a new prison where he started seeing Dr. Brown and came within the control of the supervision of Warden Runyon. And when he asked Dr. Brown to renew his prescription for medical lenses for contact lenses that had been provided by VDOC physicians, Dr. Brown went to Warden Runyon and asked if he could do it, and she refused. So that is deliberate indifference, Dr. Brown. And the other point there about that evidence is that both in the Sinto case last month, in the Jehovah case, this Court has recognized that when there's a longstanding documented medical need and then a physician suddenly departs from that and changes course, that gives rise to an inference of deliberate indifference. We don't have the medical records from the initial decision to prescribe. Is that right? We don't have those records? We do, Your Honor. JA-91 is the prescription from 2005. I'm prescribing these. I guess the inference is you wouldn't prescribe them unless they were medically necessary. That's right, Your Honor, because the policy was the same at that time, and the policy said contact lenses need to be medically indicated. The natural inference is that... Okay, so, and I get your point is that there may be something sinister afoot, but I suppose the other conclusion is each doctor is able to arrive at his or her own independent judgment as to whether or not there's a medical necessity, and Dr. Brown arrived at a different conclusion. That's what Dr. Brown says. We say the evidence shows the opposite, and so summary judgment should have been denied. But at the very least, Goodman should have been able to ask him about that conversation with Warden Runyon. I will say this. I think the amount of time we spent litigating this matter, we could have gotten this guy in contact for years to come. I'm thinking about buying them myself. He's offered to pay the full cost of his contact lenses, so I totally agree, Your Honor. He's offered to pay them himself, yeah. And so it's a little curious why we're still here. You're paying you. That's right, Your Honor. Thank you. I'd like to reserve the remainder of my time for rebuttal. All right, so reserved. Ms. Johnson. May it please the Court, my name is Carlene Johnson. I represent Elton Brown, who is an optometrist. Fundamentally, this case is one where, with respect to my client, he examined Mr. Goodman several times back in, the earliest we have in the record is January of 2009. There is an examination, there is a notation in the chart from late December 2008. My client doesn't work for the Department of Corrections anymore. We're a little bit at the mercy of others with respect to the documentation. Mr. Goodman has put that documentation in the record himself as well. Optometrist Dr. Brown examined Mr. Goodman. He prescribed him eyeglasses. When the glasses were ordered, he fit those glasses on Mr. Goodman. They corrected his vision in both eyes, which are only moderately different, and the vision correction is for nearsightedness, moderate myopia. It corrected his vision to perfect vision, 20-20 in both eyes. As an optometrist, Dr. Brown is one who deals with vision correction primarily, minor eye disorders, vision correction. He's not a medical doctor. He does not go to medical school. Mr. Goodman was being seen by a medical doctor. In fact, in the record, you see notations that are in Mr. Goodman's medical chart, dating back many years, but throughout this period he's being seen for sinus problems, for allergy problems. Mr. Goodman nevertheless complains to Dr. Brown that he has headaches, and he says he has headaches despite having his vision correction to 20-20 with prescribed eyeglasses. Dr. Brown notes at the time in the chart, back in 2009 when he was seeing him every time, that he saw nothing, no serious medical need, no medical need for contact lenses at all. As an optometrist, what does he do? He doesn't ignore Mr. Goodman's complaints of having headaches. He doesn't see anything within his field of expertise that would give him any reason to understand why having glasses that correct his vision to 20-20 would cause him headaches, why prescribing contacts instead of glasses would alleviate the headaches. So Dr. Brown refers Mr. Goodman to an ophthalmologist. It is correct that there's nothing that Mr. Goodman has put in this record as to what that ophthalmologist said or did. I would note that the district court's decision finally granting summary judgment in this case is a document number 150 in the district court. Mr. Goodman put voluminous material in the court, including not only his own declarations, not only a declaration from his father, who's a gynecologist in Oklahoma, but also medical records, which distinguishes this case from many other cases. And in fact, cases that Mr. Goodman's attorney has cited regarding all outside the Fourth Circuit, I believe, but cases where there was some discussion by the Third Circuit in a couple of cases as to whether or not on remand there might be some use to an expert witness being appointed. In those cases, there were no medical records. For whatever reason, those institutions had lost, had destroyed, there were no medical records. And so the court didn't have anything to go on. Here we have voluminous medical records. We have voluminous material that Mr. Goodman has had access to. He does not contend that he did not have access to his ophthalmologist's record. He gets out pursuant to a release the same as he did all the other medical records that he put in here. It is Mr. Goodman, I would submit, Your Honor, who's cherry-picking. He's cherry-picking what it is he puts in the record so that he can take what it is he alleged in his amended complaint as a, quote, typical nearsighted vision problem, end quote, paragraph 23 in his amended complaint, and turn it into a Federal lawsuit that has now been going on for into its sixth or seventh year. It was nine years, or almost eight years ago that my client saw Mr. Goodman for a period of six months. The last time that Dr. Brown saw Mr. Goodman was in June of 2009. Mr. Goodman had an ophthalmologist's appointment scheduled for him in September by referral from Dr. Brown so that somebody else, a medical doctor with more expertise, could look into Mr. Goodman's claim that he was having headaches that he thought would be cured by having contacts instead of eyeglasses. Brunswick, which was the correctional facility where Dr. Brown was an optometrist at the time, he would go there periodically when anybody needed to be seen for optometric conditions. Brunswick closed around that time, September of 2009. Dr. Brown never saw Mr. Goodman again after June of 2009. There is still a lot more in the records after that. Mr. Goodman was seen by two more optometrists. He acknowledges he saw that ophthalmologist. And so... Can I ask a question? Do you have any reason to dispute that the earlier doctors who saw him, who actually described the contact lenses, did so for anything but their belief that they were medically necessary? The policy actually says medically indicated, that contact lenses may be prescribed when they're medically indicated. Mr. Goodman, ably on his own for many years, has made semantic arguments about that, medically indicated versus... Yeah, you're not answering my question. Well, I'm building the background, I thought, Your Honor, to answer the question. Whether or not the doctor, and there was one in the record, a doctor who had prescribed, did a one-page eye exam and prescribed that. Whether or not that doctor or at that time those people or that facility interpreted the Department of Corrections policy medically indicated as something different than medically required, we do not know. There is nothing in that, it's just a one-page chart, it gives what his 20, 200, whatever it is that his eye was, and it put on the contact lenses were ordered. It doesn't speak to the need for contact lenses, of course, this is an inmate, and so it's not the same sort of thing as me going into an optometrist and I can get contact lenses, I don't have to show that I need them. Contact lenses obviously are a treatment for vision, for vision problems. Contact lenses treat my eyes as well as glasses do. There's nothing in the record that shows that that one optometrist, whatever the nature of the person was back in 2005, who did order those contact lenses, thought they were medically necessary or interpreted this policy in the same way that the people at Brunswick interpreted in 2009. And there's documentation in the record from that time period, not only from Dr. Brown, where he was saying it was not medically necessary for Mr. Goodman to have contact lenses. But also, I'm sorry? Medically indicated is the lower standard. Medically indicated is what the policy... Is the lower standard than medically necessary. Do you agree with that? I do agree with that, Your Honor. I don't think you ever answered Judge Diaz's question, but I suppose basically that an optometrist, just like your client with the same credentials, prescribed contact lenses, correct? Correct. An optometrist that's so qualified like your client in the past prescribed contact lenses for Mr. Goodman, yes or no? Yes. And there's nothing to indicate that that was not based upon his or her medical opinion, is there? There's nothing to indicate that it was based on... That's not the standard. It says medically indicated. You're trying to testify now. You're putting your spin on it. We're talking about scientific things, right? We're not talking about lawyers putting spin on it. The question is that an optometrist prescribed them, correct? Correct. The standard was the same as it is now, medically indicated, correct? Correct. When you say standard, Your Honor, the wording in the policy was the same. The constitutional standard is serious medical need, and it's a constitutional claim. It is an Eighth Amendment cruel and unusual punishment claim that Mr. Goodman has on appeal in this court. Well, I guess the point is if all he's got, and of course your learned opponent says that there's something more here, but if all he's got are the competing views of two different doctors, one who says, you know, he needs them, another who says he doesn't, that's not enough, because that doesn't amount to deliberate indifference. Well, that's certainly the case, Your Honor. And there were also other doctors from the time period contemporaneous with Dr. Brown's six-month window when he saw Mr. Goodman, the ophthalmologist, for example, that Mr. Goodman says nothing about. There's no reason for a court to interpret silence from a plaintiff who has access to that material and acknowledges, having been seen, he was referred to an ophthalmologist by Dr. Brown and was seen by an ophthalmologist. Can I ask a question? And this may not be relevant, but it is interesting. So he offered to pay for them. So what's the problem? Why can't he get them? Dr. Brown doesn't have a horse in this race, Your Honor, with respect to that. Dr. Brown went to see a warden to see if he could get contacts, not that they're required by Dr. Brown, not medically indicated, no reason for him to have contacts as opposed to eyeglasses. But I'm quite sure Dr. Brown and many others would agree with you. Why not give him contact lenses if they are something that he wants, even if they're not medically required? But that's not the constitutional standard. Dr. Brown approached the warden. I mean, the implication is, and the only implication could be he wanted to get contact lenses for the guy because the guy wanted them, but he had no medical need for them. And he referred Mr. Goodman to an ophthalmologist to see if there was an ophthalmologist who would see if he had a need for them. I think you answered my question in a roundabout way, but you're saying that it doesn't matter who pays for them, the policy is the policy. It doesn't matter to Dr. Brown who pays for them whatsoever. No, I'm asking, given the fact that Mr. Goodman agreed to pay for them, that that doesn't necessarily satisfy the medically necessary standard here. No. If he had cut you a check and said, I want contacts, the warden still would have been within his rights or the medical expert would have been within his or her rights to say, I'm sorry, they're not medically necessary. Well, that's their medical judgment. Is it necessary for this person to have contact lenses? Is that a yes to my question? Yes. You seem to be having a hard time answering yes or no. I'm sorry. So the question is, if he's willing to pay for them, Mr. Goodman, the medical doctor and or the warden in this case could still say, I'm sorry, Mr. Goodman, it's not about money. It's about whether or not the contacts are medically necessary. Is that right? Yes. I don't represent the warden, but certainly, yes. The medical judgment doesn't change. The medical judgment is not based on who pays for them, how they're paid for, or anything like that. Do you have a medical need for contact lenses? The record is consistent that Mr. Goodman did not have a medical need for contact lenses. Dr. Brown spoke to that in the contemporaneous records at the time. The nurses spoke to that. The ophthalmologist was referred to, nevertheless. Is there a blanket policy prohibiting the prescription of contact lenses in VDOC? Not that I'm aware of. I don't represent the Virginia Department of Corrections. It's not that my client is aware of at all. And there's nothing in the record that speaks to that, and nothing in the record, I think, that Mr. Goodman's attorney makes a reference to that with respect to Dr. Spruill, who I don't represent, who was an optometrist that was seen two institutions later by Mr. Goodman. But there's nothing in the record that even says anything like that with respect to Dr. Brown. There's nothing of any knowledge or reference or anything like that that Dr. Brown had any knowledge of. And the record does make clear, and he makes clear that there was nothing in the policy that made him decide whether or not Mr. Goodman had a medical need for contact lenses. He did not in his medical judgment as an optometrist. He nevertheless referred to an ophthalmologist to see if there was something beyond the scope of Dr. Brown's expertise as an optometrist that he was not aware of, that he did not know of, that he could not therefore diagnose. He passed him on to an ophthalmologist with more expertise, somebody who's gone to medical school to see if there's something he's missing. Your Honor, with respect to the point that we made in the appellee's brief with respect to both aspects of the cruel and unusual punishment claim, the district court did say there were some different decisions going different ways about vision correction, so I'm not going to wade into that. The district court therefore solely relied upon the prong of the deliberate indifference and said there's no deliberate indifference here. And certainly the record supports that that was the correct decision. Nevertheless, because there is a second prong, and we are talking about contact lenses versus eyeglasses with respect to the optometrist, we did make the additional argument that on this record here, and there's nothing that is needed beyond this record. You've got all the medical records here. There's no basis for considering this to have been a serious medical need under the Constitution, the part that is required in order to make it cruel and unusual punishment. Let me ask you a question. I know your time's up. This will be real brief. When I went through the medical records, I never saw any indication that he was seeking pain medication or that this was a ruse to get pain medication. Did I miss anything? Is there anything in the record indicating that? What is in Mr. Goodman's declarations, and there are a number of them, so I'm afraid I won't be able to point you to a particular one in the record, but there is a reference that he makes to saying that when he talked to nurses about pain medication, that they said it's not a good idea to be taking pain medication long term. And so that's what he says as the counter. He was certainly taking medication. Answer my question. Okay. I believe my time. There's no indication that he was trying to proactively get narcotic drugs. He wanted contact lenses instead, right? Yes, Your Honor. You don't think having a headache is severe? I'm sorry? You don't think having a headache every day is a severe condition? If we know that your headaches could stop solely by giving you contact lenses, you don't think that would be cruel and unusual? Forget about all the causation. I'm talking about we know, for example, that if we gave you contact lenses, it would stop your headaches. You don't think denying those contact lenses and the result being you have headaches every day, that's severe enough to meet the Eighth Amendment standard? Is that what you're saying? I don't think there are developing standards of decency. You've never had a headache, apparently? Huh? You've never had a headache in your life? I have bifocals, I have lazy eye, the eyes don't go the same place, and I have eye strain because I'm a lawyer, so I have a fair amount of headaches on a regular basis. A headache can make you climb a wall. You don't think that would be severe? Dr. Brown referred Mr. Goodman to an ophthalmologist. You dove into the Eighth Amendment aspect, which the court didn't, and you're saying that that amount of law wouldn't reach the standard of severe? I don't think that Mr. Goodman, even in his own declarations, has said anything other than he has severe headaches. Migraine quality. Okay, that's all the questions I have, and your time is up. Thank you, Your Honor. May it please the Court, Chris Jones on behalf of the defendant appellee, Dr. David Spruill. Like Dr. Brown, we're asking the Court to affirm the trial court's entry of summary judgment in favor of Dr. Brown and Dr. Spruill. And given my very limited amount of time, I will rely largely on the briefs and the arguments presented by Ms. Johnson because, frankly, they're the same arguments I would raise on behalf of Dr. Spruill. What I do want to take a brief moment to address is a factor that Mr. Goodman has made or has placed great emphasis on in the briefing, and that is Dr. Spruill's admission of the allegations in paragraph 168 of the amended complaint. And to paraphrase those allegations, Mr. Goodman alleged that he had an appointment with Dr. Spruill and he explained he was experiencing headaches as a result of his eyeglasses and the contact lenses would remedy those headaches. And that Dr. Spruill then pointed to a memo with VDOC policy and said, I can't do it. We admitted those allegations because there was that exchange. But that doesn't impact the court's inquiry here today because this isn't a case about what the VDOC policy was or whether Dr. Spruill or Dr. Brown complied with the Department of Corrections policy. This is an Eighth Amendment case where we're trying to determine if there was an objectively serious medical need on behalf of Mr. Goodman and whether or not Dr. Brown and Dr. Spruill subjectively acted in deliberate disregard of that need. And the undisputed evidence at the trial court level was that Dr. Brown and Dr. Spruill evaluated and examined Mr. Goodman and formed a medical opinion that there was no medical need for contact lenses. That's the Eighth Amendment inquiry. That's why we're here. There's no need to muddy the water and worry about what the policy says or doesn't say. So one other minor point to address. Chief Justice Gregory, I believe you mentioned during... I like that, but it's not correct, but go ahead. One of the prior arguments that the VDOC physicians or optometrists, better yet, at the prior institutions had prescribed contact lenses. And if we assume that they complied with the Department of Corrections policy, that means they found contact lenses were medically indicated for Mr. Goodman. There are two responses to that point. One is, again, this isn't a Department of Corrections policy case. This is an Eighth Amendment case. There's a subjective element. And you're saying they're inextricable, that they're mutually exclusive? I think they are. How could they be? I think it's absolutely possible to follow. Let's assume the Department of Corrections policy is wrong. I disagree with that position, but let's assume it's wrong.  It is absolutely possible for Dr. Brown and Dr. Sproul to form a medical opinion as to whether contact lenses are warranted, whether glasses are sufficient, and to act on that medical judgment while complying with the policy. So I don't think we need to worry about whether or not there was a violation of the policy. I think that's irrelevant to the inquiry here today. To turn back to where I was, there's a subjective element to an Eighth Amendment claim. It's got to be subjective, deliberate indifference. So even if the prior physicians or optometrists, again, I'm sorry, I keep saying physicians, even if the optometrists at the prior facility formed a medical opinion that contact lenses were medically indicated, it doesn't mean that Dr. Brown or Dr. Sproul had to reach that same conclusion. And it doesn't mean that if Dr. Brown and Dr. Sproul erroneously reached a different conclusion, that they've committed an Eighth Amendment violation. It's not a malpractice case either. But isn't he saying that they did reach the same conclusion, but then they were stymied by the officials saying, no, we're not going to give them to you. That's what he said, right? Dr. Sproul certainly referenced the Virginia Department of Corrections policy, and Dr. Brown certainly went to Warden Runyon at Brunswick and asked if he could prescribe contact lenses as a workaround, and both came back and said, no, we can't do it. But that's not the point. That's just not the point. It's not the point if vets abhorred their independent medical opinion and they didn't follow what they thought medically, but instead followed. Why is that not an issue? I see I'm out of time. May I answer your question? Please. The answer is the undisputed evidence in the affidavits from Dr. Brown and Dr. Sproul is that they examined Mr. Goodman. There is another side of affidavits, right? Didn't Mr. Goodman give one? Mr. Goodman provided an affidavit that had a number of factual matters. It also included a number of opinions we argued where he was not qualified to provide and should be disregarded. But he was given a fact when he said this is what was told, right? That was the opinion. He said that they were told you need them, but they won't let me give them to you. But there's nothing in the record that Dr. Brown, Dr. Sproul, or anyone else went to Mr. Goodman and said, I think contact lenses are medically indicated, medically necessary, whatever you want to say it, but I can't prescribe them to you because of the Department of Corrections policy. That's your side. But his side says otherwise. Are we just to discount him at this stage? This is summary judgment. How do we just categorically discount his sworn affidavit? And all emphasis would be drawn in his favor. How do we do that? Well, for starters, he was there for the conversations. He has firsthand knowledge. Who is he? Mr. Goodman, I'm sorry. Okay. Mr. Goodman is there for his sessions with Dr. Brown and with Dr. Sproul. He heard the conversations. He's filed medical records with the courts. We've seen the medical records. He doesn't need discovery to ascertain that information. If Dr. Brown or Dr. Sproul told him contact lenses aren't indicated, they're not necessary, or contact lenses are indicated, they are necessary, but I'm not going to prescribe them because of this policy, he could state that in his complaint and he may survive summary judgment. I understand the Chief Judge's question is he has stated that for its equivalent and now we've got a battle of the affidavits that we shouldn't resolve at summary judgment. Do you disagree with that? I believe the court should not engage in a battle of the experts at the summary judgment. No, no, no, battle of factual assertions. You've got the doctor saying, I didn't think they were medically necessary. We've got Goodman saying, if we believe your opponent, he told me they were medically necessary but refused to prescribe them nonetheless. And I disagree with that interpretation. Okay, that's the question, right? So where in the record is your point of view? I mean, I understand the evidence from the doctor, but what did Mr. Goodman actually say? I know he said a lot. My recollection of the affidavits is that Mr. Goodman said Dr. Brown went to the warden and asked if he could prescribe contact lenses as a workaround. Does that mean that he thought they were necessary and he was going to prescribe them despite policy? I disagree with that interpretation. But that's an inference that can be drawn from it. I don't think it's a reasonable inference, John. If that's what was meant, then that should have been spelled out in the complaint. Then it would have to be an inference then. It would be direct. That's what inferences are for, when it's not direct. But it's got to be all reasonable inferences, and I don't think that's a reasonable inference at this stage. Well, why would he trace up there and do that then? Out of the goodness of his heart. Is that in the record? There's the goodness of it, the doctor had a good heart? It's not. Well, then, see, you can't have it both ways. It's not in the record, but he has a good heart. He wanted to interpret everything in your way. But that's not the way the law is done. The world construes by wit, but the court must construe by the law. And the law says that all reasonable inference would be drawn to his. Just because he's a prisoner does not make him a child of a lesser God when he comes before the federal courts. He stands equally so. I found it interesting that that category of people don't get discovery. I mean, lawyers with 20 brief cases come to court and file cases for years and they get discovery. On and on and on and on. Here's a person not given one ounce. It's like telling a person, a blind person, I'm going to take your cane away from you, then I'm going to punish you for stumbling into the furniture. Because you don't have what I told you you couldn't get, which is discovery. Go ahead. I'll give you. That was all I had, Your Honor. That's all? Okay. Thank you very much. A few points, Your Honors. Ms. Johnson stated repeatedly that Dr. Brown referred Goodman to an ophthalmologist. With respect, that's incorrect. Dr. Schilling referred Goodman to an ophthalmologist. He said he called the nurse at the correctional facility and referred him to an ophthalmologist. Dr. Brown never said in his affidavit that he did that. He said he learned from the medical records later that Goodman had been referred to an ophthalmologist. In fact, that evidence supports us because it showed when a prison administrator looked at the records, he thought, well, maybe there is a problem here. Maybe Goodman is suffering headaches caused by eyeglasses. And he sent him to an ophthalmologist to try and get that corrected, something that Dr. Brown refused to do himself, even though he was Goodman's doctor. Defendants said we're cherry-picking the evidence we put in the case, that we've kept the ophthalmologist's record out. I'm not aware of any obligation to put that record in the evidence, even assuming Goodman had it. There's nothing in the evidence that shows he had it or that it was available. In any event, that sounds like an admission to me from the defendants that this case would have been a good case to have discovery in. They could have asked Goodman for that record if he wanted it. He could have asked Dr. Brown for things like, well, what did you talk with Warden Runyon about? He could have deposed Warden Runyon and said, well, what happened in that conversation in December 2008? What did Dr. Brown say? Can you point out the specific evidence from your client that says the evidence, the contacts were medically necessary or medically indicated? Dr. Brown told me that, but he refused to prescribe them nonetheless. Where is that? The most specific evidence, Your Honor, is that Goodman alleged that Dr. Brown told him, this is at JA39, that the sole reason he was refusing to prescribe contact lenses for Goodman was due to VDOC policy. So I don't think Goodman had an obligation to say in his allegation, in his complaint or in an affidavit, to get past summary judgment, Dr. Brown explicitly told me that he believed I had a medical need for contact lenses because that allegation that he denied contact lenses based solely on VDOC policy means the same thing. If Dr. Brown had been not denying contact lenses based on his medical judgment, he wouldn't have said I'm denying them solely based on VDOC policy. But of course the policy says that they're not available unless medically necessary, not that there's a blanket prohibition on them. So if you accept that and you read the policy, there's nothing untoward about that, it seems. Well, I agree that's a potential inference, Your Honor, but I think it's also a potential inference that when he said I'm refusing you contact lenses based solely on VDOC policy, he meant I was told by Ward and Runyon that I can't prescribe contact lenses for you, and I'm therefore refusing to prescribe them for you based on that. And with respect to Dr. Sproul, the evidence is the same. As counsel admitted, when Goodman told him he needed contact lenses, Dr. Sproul held up a memo that effectively banned the prescription of contact lenses. So I'm not sure, to me, that evidence is sufficient to show that Dr. Sproul was denying contact lenses based on the policy, based on the effective ban on contact lenses, not based on his medical judgment. If even assuming the defendants didn't say to Goodman, didn't explicitly admit to him that he had a medical need for contact lenses, I don't think that means his claim needs to be rejected. I think there's other evidence in the record that gives rise to an inference that that's what they believed. There's the evidence from 2005 to 2008 showing that he was prescribed contact lenses. Opposing counsel says, well, we don't really know why they prescribed contact lenses from 2005 to 2008. Maybe they were doing it out of the goodness of their hearts. Maybe they didn't think contact lenses were medically needed. Number one, those are all inferences. Those are inferences that can't be drawn in favor of the defendants at this stage. This is summary judgment, so you can't draw those inferences for them. The perfectly permissible inference is that they prescribed those contact lenses because Goodman had a medical need for contact lenses. And to the extent there's any speculation or doubt about that, the district court should have allowed discovery. We could have asked those doctors, well, why did you prescribe contact lenses from 2005 to 2008? But what the district court did was totally shut down any sort of factual investigation by Goodman and by defendants that would have shed light on these issues and that would have made this whole exercise of coming up to this court again for a second time unnecessary. So what the district court did was to deny Goodman any avenues to prove his claim and then say, well, sorry, you don't have any evidence to prove your claim so I'm going to grant summary judgment and I'm going to defer to the doctors merely because they're doctors and this case involves medical issues. That might be what a jury would do at trial, but it's not a permissible approach for a district court to take in ruling on a summary judgment motion. And the court therefore turned the summary judgment standard on its head and we ask that it be reversed. Thank you. Mrs. Zimmerman, the court likewise notes that you're a court opponent and we thank you so much for your service. The court depends on service by you and other lawyers like that and we thank you so much. Also, we note the able representation of counsel with you as well. We'll come down. We will come down Greek Council and we'll take a brief recess.
judges: Roger L. Gregory, William B. Traxler, Jr., Albert Diaz